THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT JOHNSON,<br>2108 Pin Oak Parkway<br>Bowie, Prince George's County, MD 20721<br><br>Plaintiff,<br><br>v.<br><br>CORINTHIAN COLLEGES, INC<br>6 Hutton Centre Drive, Suite 400<br>Santa Ana, California 92707<br><br>and<br><br>RHODES COLLEGES, INC.,<br>6 Hutton Centre Drive, Suite 400<br>Santa Ana, California 92707<br><br>Defendants. | C.A. No.: _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff, Robert Johnson, by and through his undersigned counsel and hereby demands judgment against Defendants, Corinthian Colleges, Inc. and Rhodes Colleges, Inc. for the reasons and in the amounts set forth below. In support thereof, Plaintiff avers as follows:

1. The instant action seeks to recover damages incurred due to unlawful retaliation, as detailed below, in violation of the False Claims Act, 31 U.S.C. §3730(h).

## PARTIES

2. Defendant, Corinthian Colleges, Inc. (hereinafter "Corinthian") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 6 Hutton Centre Drive, Suite 400, Santa Ana, California 92707. At all times

1

relevant and material hereto, Corinthian operated one of the largest for-profit higher education companies in the United States, publicly traded on the NASDAQ National Stock Market (ticker symbol: COCO).

3.      Defendant, Rhodes Colleges, Inc. (hereinafter "Rhodes") is a corporation organized and existing under the laws of the laws of the State of Delaware, with its principal place of business located at 6 Hutton Centre Drive, Suite 400, Santa Ana, California.  At all times relevant and material hereto, Rhodes was a wholly-owned subsidiary of Corinthian, doing business at campuses throughout the United States under the trade names of Everest College and/or Everest Institute.

4.      Plaintiff, Robert Johnson (hereinafter "Mr. Johnson"), is an adult individual who resides at 2108 Pin Oak Parkway, Bowie, Prince George's County, MD 20721.  At all times relevant and material hereto, Mr. Johnson was employed as the Campus President of Defendants' Everest Institute campus in Silver Spring, Maryland (hereinafter "Everest Silver Spring"), until his termination on June 18, 2012.

## JURISDICTION AND VENUE

5.      This Court has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

6.      This Court has personal jurisdiction over Corinthian and Rhodes (hereinafter collectively, the "Defendants") pursuant to 31 U.S.C. § 3732(a) because at all times relevant and material hereto, Defendants transacted business in this District, and upon information and belief, continue to do so.

7.      Venue is appropriate in this District, as at all times relevant and material hereto, Defendants transacted business in this District, and upon information and belief, continue to do

so. Moreover, venue is proper as the incidents giving rise to this action occurred within this District.

## PERTINENT LEGAL AND REGULATORY BACKGROUND

8. The Higher Education Act of 1965 (hereinafter the "HEA") establishes the rules and regulations that apply to both students and institutions, including for-profit institutions such as Everest Silver Spring, regarding their ability to apply for and receive federal student financial aid. 34 C.F.R. §600.5 and 34 C.F.R. §668.32.

9. Participation in the various student financial aid programs enumerated under Title IV of the HEA, including the Federal Pell Grant and Federal Direct Loan Programs, requires for-profit institutions such as Everest Silver Spring, to execute a Program Participation Agreement with the United States Secretary of Education by and through the United States Department of Education.

10. The Program Participation Agreement conditions an eligible institution's receipt of Title IV HEA financial aid funds, on the institution's compliance with various regulatory requirements, including *inter alia*, restricting admissions to only properly eligible students.

11. Once the Department of Education determines that an institution is qualified, students may then request Title IV funding using a Free Application for Federal Student Aid. Upon the student's approval, the federal government disperses student aid directly to the institution.

### *Title IV – Eligible Institutions*

12. Participation in HEA Title IV financial aid programs is strictly limited to statutorily designated, "eligible institutions" of higher education.

3

13. Pursuant to 34 C.F.R. §600.2, an "eligible institution" is an institution that qualifies as: (1) an institution of higher education; (2) a proprietary institution of higher education; as defined in §600.5; or (3) a postsecondary vocational institution, as defined in §600.6; and one that "[m]eets all the other applicable provisions of this part." 34 C.F.R. §600.2.

14. As a for-profit college, Everest Silver Spring is deemed a "proprietary institution of higher education" and thus qualifies as an "eligible institution."

15. Proprietary institutions of higher education can only admit as regular students persons who: (1) have a high school diploma; (2) have the recognized equivalent of a high school diploma; or (3) are beyond the age of compulsory school attendance in the State in which the institution is physically located. 34 C.F.R. §600.5.

### *Title IV – Student Eligibility*

16. A student is eligible to receive Title IV HEA program assistance if the student is a regular student enrolled, or accepted for enrollment, in an eligible program at an eligible institution.

17. An eligible student must: (1) have a high school diploma or its recognized equivalent or (GED); (2) **have obtained a passing score on an independently administered test in accordance with the HEA**; or (3) enroll in an eligible institution that participates in a State "process" approved by the Secretary under the HEA. 34 C.F.R. §668.32.[1] (emphasis added).

18. Students without a high school diploma or its recognized equivalent are eligible to receive Title IV HEA program assistance, provided that they take and pass an independently and

---

[1] The Department of Education has stated in its 2006-2012 Federal Student Aid Handbooks that no State test had been submitted for approval. Therefore, there was no State option available during the relevant time period.

4

properly administered Ability-to-Benefit Test (hereinafter "ATB test").[2] 34 C.F.R. §668.32(e)(2). These students are commonly referred to as "non-traditional" or "ATB" students.

19. The purpose and intent of the ATB test is to measure whether non-traditional students have the basic skills needed to benefit from higher education and the training offered by an institution.

20. To establish a non-traditional student's eligibility for Title IV HEA program funds, an institution such as Everest Silver Spring, must select a certified test administrator to give an approved test. 34 C.F.R. §668.151(a)(1).

21. The 2010-2011 Federal Student Aid Handbook published by the Department of Education lists the May 19, 2006 Federal Register as containing the most recent list of approved ATB tests that schools may use. These tests included the Career Programs Assessment Test (hereinafter "CPAT") and the Wonderlic Basic Skills Test (hereinafter "WBST"). *See* Federal Register Volume 71, Number 97 (Friday, May 19, 2006).

22. Moreover, an institution may only use the results of an approved test provided it was independently and properly administered. 34 C.F.R. §668.151(a)(2).

23. A test is independently administered if the test is: (1) given at an assessment center by a test administrator who is an employee of the center; or (2) given by a test administrator who: (i) has no current or prior financial or ownership interest in the institution; (ii) is not a current or former employee of or consultant to the institution; (iii) is not a current or former member of the board of directors; and (iv) is not a current or former student of the institution. 34 C.F.R. 668.151(b).

---

[2] A change in federal law eliminated Title IV student loan and grant eligibility for students without a high school diploma or GED. The law became effective July 1, 2012. After this point, ATB testing has essentially been outlawed vis-à-vis determining student eligibility for federal financial aid.

24. On the other hand, a test is not independently administered if an institution: (1) compromises test security or testing procedures; (2) pays a test administrator a bonus, commission, or any other incentive based upon the test scores or pass rates of its students who take the test; or (3) otherwise interferes with the test administrator's independence or test administration. 34 C.F.R. 668.151(c).

25. In addition to ensuring that ATB tests are administered properly and independently, an institution, such as Everest Silver Spring, is also required to maintain a record for each individual who took an approved ATB test. The record must include: (1) the test taken by the student; (2) the date of the test; and (3) the student's scores as reported by the test publisher, assessment center, or State. 34 C.F.R. §668.151(g).

26. Under 34 C.F.R. §668.154, an institution is liable for Title IV HEA program funds disbursed to a student if: (a) the institution used a test that was not administered independently, in accordance with 34 C.F.R. §668.151(b); (b) the institution or an employee of the institution compromised the testing process in any way, in accordance with 34 C.F.R. §668.151(c)(1); or (c) the institution is unable to document that the student received a passing score on an approved test. 34 C.F.R. §668.151(g).

27. Accordingly, the Defendants are liable for all Title IV HEA funding dispersed to ineligible students at Everest Silver Spring.

28. Additionally, actions taken by the Defendants to secure Title IV HEA funding, despite violations of the aforementioned regulations, would most certainly constitute patent violations of the False Claims Act, 31 U.S.C. §3729, *et seq*.

## FACTS OF THE CASE

29.   Mr. Johnson commenced his employment with the Defendants in August 2009 as Campus Vice President of the Everest Institute at Arlington, Virginia and was promoted to Campus President of Everest Silver Spring on March 19, 2010.

30.   The scope of Mr. Johnson's employment involved oversight of all aspects of Everest Silver Spring's operations, including *inter alia*, administration, recruiting, hiring, and training campus staff and directors.

31.   After taking over at Everest Silver Spring, Mr. Johnson became aware of widespread improper admissions practices, seemingly utilized in order to maximize student enrollment and to correspondingly increase its revenues at the expense of federal student financial aid programs.

32.   The Defendants and Everest Silver Spring officials routinely violated HEA statutory requirements, rules, and regulations by:

- (a)   admitting students without high school diplomas or recognized equivalent that were not independently and properly tested for an Ability to Benefit;

- (b)   admitting students without a high school graduation or recognized equivalent and providing those students thirty days to produce Proof of Graduation and credentials;

- (c)   keeping students enrolled that should have otherwise been dropped in order to maximize the amount of federal student financial aid received; and

- (d)   failing to maintain adequate and proper ATB testing records for applicable students, in direct contravention to 34 C.F.R. §668.151(g).

### *Defendants Knowingly Admitted Students Who Failed To Satisfy ATB Requirements*

33.   Mr. Johnson soon learned that Everest Silver Spring routinely failed to test potential ATB students, according to the requirements identified in 34 C.F.R. 668.151.

34. Everest Silver Spring used its own employees to administer unapproved examinations, in direct contravention to 34 C.F.R. 668.151(a)(2) and (b)(2)(ii).

35. In some instances, prospective students were tested without the presence of test administrators or proctors.

36. In addition to improper test administration and procedures, officials with Everest Silver Spring routinely gave its non-traditional applicants, unapproved exams referred to as SRA tests that were administered by Everest Institute employees.

37. The SRA tests evaluate basic math and reading skills and were at no time officially approved, pursuant to applicable regulations, for the testing of ATB students.

38. The Defendants then used the results of these unapproved tests to determine a student's eligibility to receive Title IV HEA programs funds in violation of federal law.

### *Defendants Routinely Enrolled Students without Proof of Graduation or a Recognized Equivalent*

39. In addition to ATB testing violations, Mr. Johnson soon learned that Everest Silver Spring routinely admitted students without Proof of Graduation from high-school (hereinafter "POG") or a recognized equivalent in contravention of 34 C.F.R. 668.32(e).

40. To give the appearance of propriety to its admissions process, Everest Silver Spring employed a scheme whereby students and admissions counselors, in direct violation of 34 C.F.R. 668.32(e), are given up to thirty days *after* admission to obtain POG or a recognized equivalent (otherwise referred to as the "30-day Rule").

41. This scheme enabled Everest Silver Spring to enroll ineligible students while ensuring that they apply for and get approved for federal student financial aid, thereby maximizing its improper procurement of Title IV monies.

42. In many cases, Everest Silver Spring representatives went far beyond the 30-day Rule, and allowed students to remain enrolled while receiving federal student financial aid without *ever* providing POG or a recognized equivalent.

43. Everest Silver Spring's admissions practices, as detailed herein, constitute clear violations of the regulatory framework, discussed above, and fall well outside the scope of permissible conduct.

### *Mr. Johnson Confronts his Superiors*

44. In early June, 2012, Mr. Johnson, in his a capacity as Campus President of Everest Silver Spring discovered that at least twenty-seven actively enrolled students had no POG or a recognized equivalent in their student records.

45. Mr. Johnson immediately reported these findings to Corinthian Regional Vice President of Operations Bob Johnson, and Division Human Resources Director Bonnie Roberge, and told them that Everest Silver Spring should dismiss these students, ensure that the federal student financial aid monies received on their behalf be refunded, and that a further investigation be conducted.

46. Mr. Johnson's recommendations were not only rejected, but he was instructed by Bob Johnson to "correct" the problem by retroactively testing the improperly enrolled students and placing the results in their files.

47. In an email dated June 5, 2012 (a true and correct copy of which is attached hereto as Exhibit "A"), Mr. Johnson stated that in the absence of a legal opinion from Defendants' corporate counsel, he refused to take these so-called "corrective" measures, because he believed that to do so would violate the HEA. This email was directed to Bob Johnson,

9

Corinthian Regional Vice President of Operations, Bonnie Roberge, Corinthian Division Human Resources Director, and Melissa Flores, Corinthian Division President of Operations.

48. Sensing internal resistance from his superiors, Mr. Johnson contemporaneously contacted an official with the Maryland Higher Education Commission ("MHEC") to seek an independent opinion.

49. At the behest of Mr. Johnson and determined to protect his anonymity, the MHEC official visited Everest Silver Spring on June 6, 2012, under the guise of an audit to determine the campus' eligibility for receipt of G.I. Bill benefits.

50. Upon reviewing the records in question, the MHEC official determined that Everest Silver Spring's records were not in compliance with applicable regulations and that Mr. Johnson's assessment, of the illegality of his superior's instructions, was indeed correct.

51. In response to his earlier email, on June 14, 2012, Ms. Flores contacted Mr. Johnson directly and questioned his refusal to test the improperly enrolled students as directed.

52. Mr. Johnson reiterated his concern that the students failed to meet legally required admission criteria and that he would not test the students absent a legal opinion from Defendants' corporate counsel

53. Ms. Flores simply responded, "that's not going to happen."

54. Subsequently, on June 18, 2012, Corinthian's Bonnie Roberge, Division Human Resources Director, and Bob Johnson, Regional Vice President of Operations, terminated Mr. Johnson because he refused to retroactively test students who had been improperly admitted to Everest Silver Spring.

55. Mr. Johnson's termination was a direct result of his fruitless attempts at internal reporting, and more importantly his refusal to participate in the Defendants' fraudulent and illegal misconduct.

## COUNT I – VIOLATION OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3730(h)

56. Plaintiff incorporates the allegations contained in the aforesaid paragraphs as if the same were set forth at length herein.

57. Pursuant to the False Claims Act, 31 U.S.C. § 3730(h) (hereinafter the "Act"), Defendants are precluded from engaging in retaliatory measures against employees who take lawful actions, intended to preclude or redress a fraud or other violation of the Act.

58. Mr. Johnson, an employee of the Defendants who engaged in such lawful actions, falls within the scope of the Act's protection.

59. As detailed above, Mr. Johnson honestly and reasonably believed that Defendants' admissions practices constituted illegal conduct, designed to defraud the United States government through improper procurement of federal financial aid funds.

60. After learning of the aforementioned conduct, Mr. Johnson promptly notified his superiors in an effort to thwart the fraudulent practices.

61. Despite his expressed concerns over unlawful conduct, Defendants nonetheless demanded Mr. Johnson take actions intended to conceal its fraudulent practices.

62. Concerned that his warnings would go unheeded, Mr. Johnson, at great personal and professional risk, contacted an official with the MHEC in order to corroborate his belief regarding Defendants' fraudulent admissions practices. The MHEC official ultimately concluded that Mr. Johnson's concerns were justified and that the complained of admission practices did, in fact, run afoul of the established regulatory framework.

63. Nonetheless, Mr. Johnson was terminated for his refusal to participate in the illegal conduct demanded by his superiors.

64. After he raised concerns to his superiors and requested a legal opinion from corporate counsel, Defendants were placed on full and complete notice of Mr. Johnson's protected activities, as construed by the Act.

65. Thus, Defendants were, in fact, aware of Mr. Johnson's efforts to stop one or more violations of the Act.

66. The Defendants termination of Mr. Johnson's employment was entirely motivated by his protected activities, taken in an effort to stop one or more violations of the Act.

67. Mr. Johnson has suffered significant economic and non-economic damages as a result of Defendants' retaliation and his ultimate wrongful termination. The amount of these damages is to be determined at trial.

68. Pursuant to 31 U.S.C. § 3730(h), Mr. Johnson is entitled to litigation costs and reasonable attorneys' fees incurred in the vindication of his reputation and the pursuit of his retaliation claims.

WHEREFORE, Plaintiff, Robert Johnson, demands judgment against Defendants, Corinthian Colleges, Inc. and Rhodes Colleges, Inc., for the full value of double wages he would have received had it not been for Defendants' illegal retaliation, with interest from the date of the termination, in addition to reimbursement for lost pension, social security, experience, training opportunities and other benefits; other compensatory damages sustained due to his unlawful termination; reasonable attorney fees and litigation expenses; and such other relief as this Honorable Court may deem just and appropriate.

## JURY DEMAND

69.  Plaintiff demands a trial by jury on all claims.

Respectfully Submitted,

_____

*Local Counsel*

Attorneys for Plaintiff, ROBERT JOHNSON